O’NIELL, C. J.
(dissenting). It is conceded, in the opinion submitted by Mr. Justice Land that the indictment does not charge, or intend to charge, that perjury was committed by the accused “on his oath or affirmation in any suit, controversy, matter or cause depending in any of the courts of this state.” It is conceded that the indictment intends to charge that perjury was committed “in a [any] deposition or affidavit taken or made pursuant to its law,” meaning the state’s laws.
It is also conceded, as I read the opinion, that perjury cannot be committed — either at common law or by the very terms of the statute — in a deposition or an affidavit not “taken or made pursuant to its (the state’s) laws,” Í take that to mean that the deposition or affidavit, if not made on the affiant’s oath or affirmation in a judicial proceeding actually pending in court, must be made pursuant to some law particularly authorizing or requiring the deposition or affidavit. In that respect the statute is like the common law.
I am sure I need not cite authority for the fundamental proposition that an ex parte affidavit, not required or authorized by law to be used in a judicial proceeding, cannot be the means of committing perjury, even though the procurer of such an affidavit might intend to offer it in evidence, or to use it to bolster up some motion or petition intended to be filed in court.
The indictment in this case charges that the object and purpose of the ex parte affidavit was “in order to assist said defendants iff obtaining a new trial in said cause and furnish a basis for a motion for a new trial by said defendants,” which motion for new trial was “by said defendants presented in said cause on June 9,1922,” which was on the day after the affidavit was made.
It is not alleged in the indictment, it is not contended in the opinion submitted by Mr. Justice Land, and it is not true that the affidavit alleged to have been made by Varnado was required by any law, or was necessary, as “a basis for a motion for a new trial.” The indictment charges, substantially, that the ex parte affidavit was an accommodation on Varnado’s part, “in order to assist said defendants in obtaining a new trial in said cause and to furnish a • basis for a motion for a new trial,” which they intended to file.
It is not charged or alleged in the indictment that Varnado’s ex parte affidavit was attached to the motion for a new trial, or that it was introduced or offered in evidence, or used in any way whatever. It is not alleged that it was intended to be attached to the motion, or to be offered in evidence, or used in any way, on the trial of the contemplated motion for a new trial.
It cannot be disputed that the men who had been convicted of murder, Joseph Rini and others, were qualified to make their own affidavit to the truth of the allegations of their motion for a new trial. As far as the allegations of the indictment go, Joseph Rini and others, but not W. W. Varnado, made the affidavit to the truth of the allegations of the motion for a new trial. Varnado’s testimony in support of the motion was not admissible by means of an ex parte affidavit, unless, of course, the district attorney saw fit to let the affidavit be introduced in lieu of the testimony of Varnado in open court. That is sometimes done. But it is certain' that, if the district attorney would not consent to the admission of an ex parte affidavit in evidence on the trial of a motion for a new trial, the convicted defendant would *592 have to produce the witness and have him sworn in open court. Every time a district judge has ruled that way this court has affirmed his ruling. Of course, if the district judge should relax the rules in favor of the defendant in such case, and allow him to try his motion for a new trial by means of ex parte affidavits, instead of the testimony of witnesses taken in open court, the defendant would have no complaint; and this court would not hear or care about it. The authority which Mr. Justice Land cites goes no further than that, viz.: State v. Gauthreaux, 38 La. Ann. 608; State v. Boasso, 38 La. Ann. 202; State v. Jones, 46 La. Ann. 545, 15 South. 402. State v. Gauthreaux is authority for the proposition merely that the district judge is not required to hear evidence on a motion for a new trial, when the allegations of the motion, if taken for true, would not warrant the granting of a new trial. State v. Boasso is authority for the proposition merely that the judge is not required to listen to argument in support of a motion which does not disclose a cause for granting a new trial. State v. Jones, 46 La. Ann. 545, 15 South. 402, is not a published opinion. There is nothing published except the syllabus,[2] which contains nothing appropriate to this discussion, except, perhaps, the broad statement that the judge was not required to examine witnesses to prove that there was newly discovered evidence, on trial of a motion for a new trial. Mr. Justice Land also cites State v. Cafiero, 112 La. 453, 36 South. 492, saying:
“On the trial of a motion for a new trial, counter affidavits or evidence are admissible. 1 Bishop’s New Or. Proc. 780.”
The published opinion in the case shows — • and an examination of the original record in the archives of this court also shows— that no affidavits or counter affidavits were ever offered in evidence in the case, on trial of a motion for a new trial or at any other stage of the proceedings, and that the question of admissibility of affidavits or counter affidavits on the trial of a motion for a new trial, or in any other proceeding, was never presented at all in the case. I respectfully submit, (therefore, that the obiter dictum should not be quoted as a decision of the court. What the author of the opinion meant to say was that counter evidence was admissible, on behalf of the state, because, after the isolated statement, “counter affidavits are permissible,” the author said “the exclusion of counter evidence would place the state at the mercy of the accused.” The only counter evidence that was offered was the testimony of the witnesses in open court; and it was in support of the state’s right to introduce the counter evidence, in that way, that the court cited Bishop’s New Criminal Procedure.
The opinion submitted by Mr. Justice Land rests upon the theory that the motion for a new trial, in the case of State v. Joseph Rini et al., was governed by the rules relating to motions founded upon alleged newly discovered evidence. The motion for a new trial was based upon the allegation that, one of the jurors, Richard Hope, was disqualified or incompetent. That fact — if it was a fact —was not subject to proof by ex parte affidavits.
The statement quoted from one of the justices of the Supreme Court of Vermont, in State v. Chandler, 42 Vt. 448, that, inasmuch as a rule of the court required that a party applying for a new trial had to make affidavit to the truth of his motion or petition, therefore a party to a,suit might be technically guilty of perjury in knowingly swearing to a false affidavit for a new trial, was obiter dictum. In fact, the very language and tone of the expression shows that it was not intended to be anything more than *593 an academic statement. The ruling of the court in that case was that the averments of the affidavit did not amount to perjury. Even that, however, is not so important as is the fact, that in the Vermont Case, it was one of the parties to the suit who was accused of making a false affidavit to his motion for a new trial. The false oath was therefore made in a judicial proceeding, as it was in State v. Matlock, 4S La. Ann. 664.* In this case, it is conceded that the alleged false affidavit was only an ex parte affidavit, not made in a judicial proceeding.
The author of the opinion from which I dissent puts great stress upon the expression “in all cases” when he quotes Act 7 of 1877, empowering notaries public to take “oaths and acknowledgments, in all cases.” Surely, the statute does not mean that ex parte oaths and affidavits taken before notaries public shall be admissible in evidence “in all eases.” If it did mean that, it would violate the Constitution.
I have no doubt whatever that the expression in section 857 of the Revised Statutes, “or in any deposition or affidavit taken or made pursuant to its [the state’s] laws,” means a deposition or affidavit required or authorized by statute to be taken or made for use in a judicial proceeding. That is why, in every statute that makes it a "crime to swear falsely in any other kind of affidavit — as, for example, in the election laws —it is necessary to declare that a false affidavit in such case shall be a crime, or shall constitute perjury.
In State v. Theriot, 50 La. Ann. 1188, 24 South. 179, it was said:
“An oath, lawfully taken is the essentia] thing to be charged in an indictment for perjury; and in case perjury is assigned on a nonjudicial oath it is insufficient to maintain a prosecution if the person who administered the oath was not legally authorized to administer that particular oath.”
In State v. Dreifus, 38 La. Ann. 882, it was said:
“This may be perhaps, a new question in our jurisprudence, but all the text-writers appear to be in perfect agreement on the principles herein announced.
“On their authority, we conclude that the following propositions are established, viz.;
“First. That there is an essential difference between a judicial and a nonjudicial oath; and that a judicial oath is one taken before an officer in open court; and a non judicial oath is one taken before an officer ex parte, or out of court.
“Second. That in case perjury is assigned as having been, committed on a judicial oath it is sufficient that the person acting is one of a class of officers having prima facie authority, and does administer the oath with due formality and solemnity, in the presence of the court— it having jurisdiction of the cause.
“Third. In case the perjury is assigned on a nonjudicial oath, it is insufficient to maintain a conviction, if the person administering the oath was not legally authorized to administer that particular oath.”
This case was not argued orally, nor was the companion case, State v. Kemp and Houghton (La.) 97 South. 475.[2] The Attorney General and district attorney have not even seen fit to file a brief, either in this ease or in State v. Kemp and Houghton. I assume that they would not neglect a case of such importance if they were not of the opinion that the judgment declaring the indictment invalid is correct. I am of that opinion.
Of course, it is reprehensible to tell a falsehood under circumstances that do not, technically, make the offense perjury. ' But that is a matter for the Legislature to consider. We cannot allow our judgment to be influenced by such considerations, without overreaching the constitutional limit of our authority. t
BRUNOT, J., concurs herein.

 Syllabus and opinion by Breaux, J., published in full in 15 Southern Reporter at page 402.

 Ante, p. 353.