# W. S. FARROW v. STATE.

No. A-9761.   April 2, 1941.
(112 P. 2d 186.)

Claude Hendon and Scott Hendon, both of Shawnee,
for plaintiff in error.

Mac Q. Williamson, Atty Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, W. S. Farrow, was charged by information in the county court of Pottawatomie county, on June 5, 1939, with unlawful possession of intoxicating liquor, was tried, convicted, and sentenced to serve 30 days in the county jail and to pay a fine of $100, from which judgment and sentence he appeals to this court.

Defendant assigns as error the refusal of the court to sustain the motion to suppress the evidence. The contentions are:

(1) That the affidavit for search warrant does not show probable cause.

(2) That the affidavit for search warrant and search warrant are insufficient in that they do not show on their face that the justice of the peace was acting within his county and district.

(3) That the affidavit for search warrant was not made under oath or signed in the presence of the justice of the peace.

The affidavit in this case is from a printed form which is set out in full in Spikes v. State, 65 Okla. Cr. 254, 85 P. 2d 327. This court has held specifically that such form of affidavit states sufficient evidentiary facts to show probable cause on which to base a search warrant. See Key v. State, 69 Okla. Cr. 71, 100 P. 2d 291 (Pottawatomie County); Pitzer v. State, 69 Okla. Cr. 363, 103 P. 2d 109.

As to the second assignment of error, the affidavit and search warrant were both signed "W. F. Durham, Justice of the Peace." The affidavit and search warrant are both styled: "Before me, W. F. Durham, Justice of the Peace, in and for Pottawatomie County, Oklahoma."

The justice of the peace was called as a witness upon the motion to suppress and stated that he was "Justice of the Peace, Shawnee Township." The testimony showed that the affidavit was presented to the justice of the peace and the warrant issued at the justice's home.

The deputy sheriff testified that the warrant was issued out of the justice of the peace court of W. F. Durham in Shawnee.

Section 4136, O. S. 1931, 39 Okla. St. Ann. § 6, provides:

"Justices of the peace and constables shall reside and keep their offices in the district from which they are elected."

In addition to the actual proof of residence, as testified to by the justice of the peace and the deputy sheriff, it will be presumed that the residence of the justice of the peace was within his district.

In Hays v. State, 70 Okla. Cr. 62, 108 P. 2d 186, 187, this court held that a search warrant which was signed, "Given under my hand at Enid, Oklahoma, this the 19th day of November, 1938. (Signed) J. S. Jacobs, Justice of the Peace," was sufficient, in that the warrant showed on its face that the justice of the peace was acting within his district.

There is no proof that the justice of the peace was acting outside of his district when he issued the search warrant. The attorney for the defendant based his contention solely upon the ground that the warrant did not recite the justice district from which it was issued.

Where the search warrant is not sufficient upon its face to show the district from which it is issued, a question of fact is presented for the trial court as to whether the justice of the peace had jurisdiction. The presumption

is that the official acts of the justice of the peace were performed within his jurisdiction.

In the case of Blair v. State, 55 Okla. Cr. 280, 29 P. 2d 998, 999, the Criminal Court of Appeals had up for construction an affidavit in which the title of the person administering the oath was wholly omitted; and in that case this court stated as follows:

"The justice of the peace failed to attach his title to the jurat attached to the affidavit made by the witness V. D. Firestone for the search warrant. His failure to do so did not make the statement in the complaint void, and the defect could have been cured by the court at any time its attention was directed to it by having the justice come into court and attach his title to the complaint. The defendant saved the state the trouble of calling the justice of the peace by placing the witness who had sworn to the complaint on the stand, and asking him the direct question, if he had sworn to the complaint, and he answered he did.

"The defendant cured the defect in the complaint, and cannot be heard to complain. Blackburn v. Commonwealth, 202 Ky. 751, 261 S. W. 277; James v. State, 188 Ind. 579, 125 N. E. 211; Warren et al. v. State, 35 Okla. Cr. 430, 251 P. 101."

The evidence is certainly sufficient to sustain the finding of the trial court that the justice of the peace was acting within his district at the time the affidavit was filed with him and he issued the warrant.

As to the third proposition, that the affidavit was not made under oath, the testimony of the deputy sheriff, which is relied upon by the defendant to support this contention, is as follows:

"Q. At the time you went before W. F. Durham and presented the complaint do you recall whether or not that you were sworn by Judge Durham? A. No, sir. Q. Were you sworn? A. No, sir. Q. He did not ask you to hold up

your hand and be sworn either on affirmation or upon oath invoking the deity, so help you God? A. I never did on any search warrant. Q. And you did not in this case? A. No, sir. Q. Then the purported showing that it was sworn to by you in the presence of W. H. Durham, that is not correct? A. I read it. I knew what I signed."

The affidavit which was admitted in evidence was signed by the officer and by the justice of the peace with the following recital appearing above the signature of the justice of the peace: "Signed in my presence and sworn to before me, this the 3rd day of June, 1939."

At the beginning of the affidavit is the following recital: "Bill Miller, being first duly sworn, on oath, states * * * ."

These recitals constitute prima facie evidence that the affidavit was duly sworn to by the affiant. Blair v. State, supra.

Although this statement in the affidavit is prima facie evidence, the same is not conclusive; and the fact that the affiant was not sworn may be overthrown by clear and convincing proof to the contrary.

This identical question has never been before this court for construction, and no case is cited in the brief of the defendant from any other jurisdiction sustaining his point.

The general rule as to the validity of an affidavit is stated in 22 C. J. S., Criminal Law, § 308, p. 461, as follows:

"No set formula is required as to an oath verifying the complaint if there is an unequivocal act whereby affiant consciously takes on himself the obligation of an oath. * * * Where a complaint is sworn to before a magistrate, notary, or other official qualified to administer the oath, his certificate of this fact in the usual form is prima

facie or conclusive evidence of a compliance with the statute, and the complaint is sufficient although no formal verification is appended to it."

In the case of State v. Tull, 333 Mo. 152, 62 S. W. 2d 389, 391, the Supreme Court of Missouri stated:

"In the Privitt Case [State v. Privitt, 327 Mo. 1194, 39 S. W. 2d 755] we said that 'by uniform decisions of our courts and by our statutes, no set formula is required to constitute an oath or to impose the obligation of an oath'; and, quoting from 2 Corpus Juris, p. 338, § 49: '* * * No particular ceremony is necessary and it is only required that something be done in the presence of the officer which is understood by both the officer and the affiant to constitute the act of swearing.' There must be some unequivocal act by which the affiant consciously takes upon himself the obligation of an oath. 48 C. J. p. 855, § 77, and see cases in note. But it need not be evidenced by any set formula. The Minnesota Supreme Court said: 'The particular formality with which an oath is administered has never been regarded in this state as of great importance. The essential thing is that the party taking the oath shall go through some declaration, or formality, before the officer which indicates to him that the applicant consciously asserts or affirms the truth of the fact to which he gives testimony.' State v. Day, 108 Minn. 121, 124, 121 N. W. 611, 613. For illustrative cases, see State v. Ruskin, 117 Ohio St. 426, 159 N. E. 568, 56 A. L. R. 403; United States v. Mallard (D. C.) 40 F. 151, 5 L. R. A. 816; McCain v. Bonner, 122 Ga. 842, 51 S. E. 36; Dunlap v. Clay, 65 Miss. 454, 4 So. 118; State v. Holladay, 120 S. C. 154, 112 S. E. 827; Markey v. State, 47 Fla. 38, 59, 37 So. 53. See, also, for collation of cases, note to Curry v. Rex (Can.) Ann. Cas. 1914B, 591, 595, et seq."

In the case of State v. Holladay, supra, it was held that an oath was sufficiently administered when the affiant stated to the magistrate: "I want to make this affidavit before you," and then both signed it, it being the understanding, according to the testimony of the magis-

trate, that the affiant was thereby swearing to the affidavit.

In the case of Town of Grove v. Haskell, 31 Okla. 77, 116 P. 805, it is stated:

"Where the electors at a county seat election, after having passed the challengers and before given a ballot, permitted the clerks to fill out a statutory form of affidavit which they signed and delivered to the election commissioners with the intent of having the same uttered and published as true and on which they received the blank ballots, the said affidavit will be deemed complete in all particulars, and the ballots which the electors so received, prepared, and cast will not be rejected for the reason that the officers failed to require the electors to raise their hands and go through the form of taking the oath, or for the reason that the entire contents of the affidavits were not restated to the electors on the occasions when the officer formally swore them. * * *

"When the literal enforcement of a statute would result in great inconvenience or lead to consequences which are absurd and which the Legislature cannot be held to have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which shall promote the ends of justice, and avoid the absurdity."

This is a construction of section 12, art. 4, Sess. Laws 1907-1908, as to the procedure for voting at a special election.

In the case of Town of Checotah v. Town of Eufaula, 31 Okla. 85, 119 P. 1014, 1017, under the above statute, the election commissioner filled in the jurat of the affidavits, the voters read the affidavits, filled in the blank spaces, signed their names and returned the affidavits to the commissioner. They were not sworn. The court states:

"* * * There is no room for doubt that it was the intent of the Legislature by this act to provide that where

one delivered, as shown, an affidavit or a paper containing the elements which we have referred to above, to another person with the intent that it should be uttered or published as true, that its making should be deemed or adjudged to be free from deficiency, entire, and complete with no part, item, or element lacking. This being true, then perjury was assignable upon these affidavits from the time when they were delivered by the electors with the intent that they should be acted on as true in securing their ballots, and this, too, without reference to whether the signers were formally sworn or not."

In the case of In re State Question No. 236, etc., 183 Okla. 355, 82 P. 2d 1017, 1020, the Supreme Court said:

"* * * In keeping with the progress of the present day custom and practice prevailing in the transaction of business where an oath is required, it is held that to constitute a valid oath it is not necessary that the affiant hold up his hand and receive a formal oral statement from the officer. It is sufficient if the affiant's attention is called to the fact that his statement is not a mere assertion, but must be sworn to, and that both the affiant and the officer believe that they have done all that was necessary to complete the oath, and that affiant intends to swear to the facts set out in the affidavit. Atwood v. State, 1927, 146 Miss. 662, 111 So. 865, 51 A. L. R. 836."

Apparently defendant bases his contention in respect to this assignment of error solely upon the statement of the deputy sheriff that he did not formally swear to the affidavit by raising his right hand and taking the oath, including an invocation to the deity. It is apparent from the testimony of the magistrate and the deputy sheriff that when the deputy sheriff signed the affidavit and presented it to the justice of the peace with the request for a search warrant, it was understood by both parties that said acts of the deputy fulfilled the requirements as to taking an oath, and said instrument was just as valid as though an invocation to the deity had been made.

It is better practice for the magistrate to formally swear the affiant to the affidavit for search warrant and all other papers which require the administering of an oath for their validity. This court, however, realizes that practically all acknowledgments of deeds, verification of written instruments, including affidavits, are generally perfected by the mere act of signing and handing the same to the party who places his jurat upon the instrument. In legal contemplation, the oath is sufficient. In the instant case, that the justice of the peace deemed the oath completed is evidenced by his act of placing his jurat on the affidavit and going ahead and issuing the warrant, in which warrant he recites that Bill Miller did appear before him, and after being duly sworn, upon oath, stated certain facts which are set forth in the affidavit.

In further support of this construction, see, also, State v. Kemp, 137 Kan. 290, 20 P. 2d 499; State v. Dodd, 193 Wash. 26, 74 P. 2d 497.

For the foregoing reasons the judgment of the county court of Pottawatomie county is hereby affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., dissents.