542 So.2d 1154 (1989)
COMMERCIAL NATIONAL BANK, Appellee,
v.
Harley STEELE, Jr., Appellant.
No. 20491-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
Cook, Yancey, King & Galloway, by Curtis R. Shelton, Shreveport, for appellee.
Booth, Lockard, Politz, LeSage & D'Anna by Joe C. LeSage, Bennett L. Politz, Shreveport, for appellant.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Commercial National Bank (CNB) filed an executory proceeding against Harley Steele, Jr., seeking to seize and sell with benefit of appraisal a vehicle purchased by Steele from Tait-Shreveport Dodge (Tait *1155 Dodge). After the sale Tait Dodge negotiated Steele's note, given for the purchase price, and secured by a chattel mortgage, to CNB. The executory proceeding was not contested and the vehicle was seized and sold, with benefit of appraisal, to CNB for 2/3 of the appraised value at a Sheriff's Sale.
Subsequently, CNB petitioned for a deficiency judgment against Steele. Steele answered, contending the chattel mortgage was not authentic because it was not signed by a subscribing witness in front of the notary. Because of this defect in the executory proceeding, Steele alleged that CNB was not entitled to a deficiency judgment.
CNB filed a supplemental and amending petition against Tait Dodge and the notary, Giles, seeking damages from them in the event that Steele proved the mortgage was not authentic and the executory proceedings defective. CNB claimed that Giles violated his duty as notary to require proper acknowledgment of the act of chattel mortgage, and Tait Dodge was negligent for failing to ensure that it was properly executed.
The case was submitted without testimony on the following joint stipulation of facts entered into between CNB, Tait Dodge and Giles:
"That Harley Steele, Jr., executed the act of mortgage, attached as Exhibit "B" to the petition for seizure and sale by executory process filed herein on October 27, 1986, on June 12, 1984, before the witnesses whose signatures appear thereon; however, the acknowledging witness, Ollie Golson, did not physically sign the acknowledgment portion of the act of mortgage in the presence of the Notary Public. Ollie Golson signed the act of acknowledgment the night before it was notarized by John S. Giles. That act of mortgage, along with other similar acts of mortgage, was placed, with the witness' acknowledgment already signed thereon, on the Notary Public's desk for his execution the next morning.
John S. Giles was, at the time he executed the acknowledgment as Notary Public, well familiar with the signature of Ollie Golson. Ollie Golson did actually appear on June 13, 1984, before John S. Giles and verbally acknowledge to him that he had, as a subscribing witness, executed, the previous night, the several acts of mortgage on John S. Giles' desk."
Supplemental stipulations were also filed by the same parties. These supplemental stipulations read:
"1. The sole issue for decision by the court in this matter to determine liability of the alternative-named defendants herein is:
Whether a chattel mortgage is properly acknowledged when the subscribing witness actually appears before the notary public before whom it is acknowledged, verbally swears and acknowledges to the notary public that the chattel mortgage was executed before him as a subscribing witness, but simply signs the written acknowledgment outside of the notary public's presence?
2. Contingent upon how the Court decides this issue, either Harley Steele, Jr., on the one hand, or Tait Shreveport Dodge, Inc. and John S. Giles, in solido, on the other hand, will be indebted to Commercial National Bank in Shreveport for the sum of $14,197.23; that is, $10,051.13, together with interest thereon at the rate of 42% per annum from date of judicial demand until paid, and plus 25% of the total amount to be collected as attorney's fees (or attorney's fees and whatever lesser amount the Court may set based upon the record herein), plus all costs of these proceedings."
Steele did not join in the stipulation.
The trial court concluded that the mortgage was not authentic. The executory proceeding was, therefore, defective and plaintiff could not recover a deficiency judgment against Steele. Judgment was awarded in favor of CNB and against Tait Dodge and Giles for the stipulated amount of the deficiency.
Tait and Giles appealed, contending that the trial court erred in rejecting the effectiveness of the acknowledgment of the chattel mortgage and in finding that this *1156 perceived defect in the executory proceedings barred the later suit for deficiency judgment.
Appellants contend that it is acceptable for a notary to notarize a statement that was signed out of his presence if the affiant subsequently appears before the notary and confirms his signature on the statement, after being duly sworn. Gunstream v. State Department of Public Safety, Etc., 353 So.2d 355 (La.App. 1st Cir.1977) is cited in support of this position. That case held that a statement of a police officer attesting to a license's refusal to take a blood alcohol test was a "sworn" statement, even if the officer signed the report outside the presence of a notary, where the officer subsequently appeared before the notary and affirmed his signature on the report.
They also claim that the trial court's reliance on League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968) in reaching its conclusion that the alleged defect precludes deficiency judgment is erroneous in light of the recent Supreme Court case of First Guaranty Bank v. Baton Rouge Petroleum, 529 So. 2d 834 (La.1987), which overruled League Central.
CNB argues that the trial court was correct in ruling that Gunstream is not applicable to this case because the statute it involved required only a "sworn report" rather than the execution of an affidavit. Furthermore, now that the law has been jurisprudentially changed, CNB relies on the supplemental stipulation that was entered into prior to First Guaranty Bank and the law as it existed under League Central. It is contended that we should address only the authenticity issue, as stipulated, and affirm the judgment against Tait and Giles upon finding that the mortgage is not authentic.
We agree with appellants that Gunstream is dispositive of the authenticity issue. Appellants correctly observe that a sworn report is an affidavit. The definition of an affidavit is "a declaration or statement under oath, reduced to writing and sworn to by the affiant before one who has authority to administer oaths." Furthermore, the case relied upon by CNB, Lambert v. Powell and White, 6 Orl.App. 195 (1909), is distinguishable. In that case the affiant never took an oath before a notary or identified or acknowledged her signature.
In any event, however, First Guaranty Bank, supra, made it clear that CNB still had a right to a deficiency judgment against Steele even if the mortgage was not authentic. The creditor's right to the deficiency judgment is now based solely upon submission of evidence establishing the existence of the obligation, the amount of the deficiency due, and the fact that the property has been sold at judicial sale with benefit of appraisal. The creditor may still obtain a deficiency judgment even where the executory proceedings are defective because of a lack of authentic evidence. See also, Nick's Auto Sales, Inc. v. Blakes, 530 So.2d 1195 (La.App. 2d Cir.1988).
As to the stipulation, the law is clear that courts are not bound by stipulations of parties purporting to determine legal conclusions. While parties are bound by their pleadings and stipulations regarding factual matters, stipulations involving questions of law are given no effect, since it is the function of the courts to construe the law. State v. Ward, 314 So.2d 383 (La.App. 3d Cir.1975), writ denied, 319 So. 2d 440 (La.1975). See also Thornton v. Moran, 341 So.2d 1136 (La.App. 1st Cir. 1976), reversed on other grounds, 348 So.2d 79 (La.App. 1st Cir.1977), a case involving an automobile accident in which the court held that stipulations entered into concerning uninsured motorist protection afforded by plaintiff's policy did not preclude plaintiff from endeavoring to claim additional coverage under the policy where the stipulation was an obvious oversight of the terms of the policy and the law as it then existed with respect to the stacking of uninsured motorist provisions.
As the stipulations at issue here were entered into prior to the ruling in First Guaranty Bank, supra, they are contrary to present law. We are not bound by *1157 them, since it is our duty to construe the law and apply it to the case at hand.
Conclusion
To summarize, we find that:
1. The chattel mortgage executed by Steele was acknowledged by a witness before a Notary Public. Therefore, CNB was entitled to a deficiency judgment against Steele.
2. Even if the chattel mortgage was not properly acknowledged, we are not precluded by a stipulation as to legal issues from considering the applicability of the First Guaranty Bank case.
3. Even if the chattel mortgage was not properly acknowledged, under the holding of the First Guaranty Bank case CNB was still entitled to a deficiency judgment against Steele.
For these reasons, the judgment in favor of Commercial National Bank in Shreveport and against Tait-Shreveport Dodge, Inc. and John S. Giles, Jr. is REVERSED and the suit against these defendants-appellants is dismissed, at the cost of Commercial National Bank in Shreveport.